775 N.W.2d 457 (2009)
18 Neb. App. 128
Susan Kay ROUSE, appellee,
v.
Roy Joseph ROUSE, Jr., appellant.
No. A-09-281.
Court of Appeals of Nebraska.
November 10, 2009.
*458 Roy Joseph Rouse, Jr., pro se.
No appearance for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
After amendments to Neb.Rev.Stat. § 43-512.15 (Reissue 2008) became effective, Roy Joseph Rouse, Jr., filed a complaint to modify his child support obligation due to his reduced earnings as a result of his incarceration. The district court denied the complaint, in part because Rouse had a child support arrearage at the time he began serving his prison sentence. For the reasons set forth in Hopkins v. Stauffer, 18 Neb.App. 116, 775 N.W.2d 462 (2009), we conclude that Rouse could personally file a complaint seeking modification of his child support obligation upon the basis that his incarceration was an involuntary reduction of income. Because the record does not show that Rouse willfully failed to pay child support when he had sufficient resources to do so, we reverse, and remand for further proceedings.

BACKGROUND
On August 6, 2008, Rouse filed a complaint to modify his child support obligation under § 43-512.15. The district court conducted a hearing, and evidence was adduced that under a February 16, 1994, support order, Rouse's current child support obligation is $216 per month. Rouse testified that he earns $1.21 a day and that as of December 2008, approximately $12 a month has been taken out of his earnings for child support. He does not own any real estate or any property other than personal items.
*459 The court received an exhibit showing Rouse's child support payment history since June 2001. Rouse testified that he was current on his child support at the time of his incarceration and that he was "a month ahead." Rouse testified that he was "up-to-date" on child support in November 2001 and that he was put in the county jail in December. Rouse was unclear on the exact date of his incarceration. He "had two sentences on top of each other" and had been continuously incarcerated. Rouse testified that he was sentenced on approximately March 23, but the record is not clear regarding the year. He also testified that he has been in prison since March 2002, that his tentative release date is 2040, and that he was approximately $20,000 in arrears on his child support obligation at the time of trial.
On February 10, 2009, the district court denied Rouse's complaint. The court stated, "The evidence reveals that [Rouse] began serving his present sentence on or about March 26, 2003. On that date, [Rouse] had a child support arrearage of $3,180.68." The court rejected Rouse's claim that his incarceration constituted an involuntary reduction in income for two reasons: (1) The statute provides for a modification complaint to be brought by the prosecutor, and (2) the statute provides that modification is not appropriate if the inmate has a documented record of willfully failing or neglecting to provide proper support.
Rouse timely appeals. No brief has been filed in response to the brief submitted by Rouse. Pursuant to authority granted to this court under Neb. Ct. R.App. P. § 2-111(B)(1) (rev.2008), this case was ordered submitted without oral argument.

ASSIGNMENTS OF ERROR
Rouse alleges that the district court erred (1) in determining that he had not demonstrated a material change in circumstances necessitating a reduction in his child support obligation, (2) by violating Rouse's equal protection rights when it denied his request to modify his child support obligation while incarcerated, and (3) by relying on the doctrine of unclean hands and ruling that modification was precluded by Rouse's being in arrears on his support obligation.

STANDARD OF REVIEW
Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. Metcalf v. Metcalf, 278 Neb. 258, 769 N.W.2d 386 (2009).
Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. Metropolitan Comm. College Area v. City of Omaha, 277 Neb. 782, 765 N.W.2d 440 (2009).

ANALYSIS
The district court observed that § 43-512.15 provides for a modification complaint to be brought by the prosecutor but stated that it was "reluctant to find that modification should initially be at the sole discretion of the county or authorized attorney." The court also cited to Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985), and State on behalf of Longnecker v. Longnecker, 11 Neb.App. 773, 660 N.W.2d 544 (2003), and stated that "[t]he evidence does not indicate that the statutory changes are in conflict with the cited precedent."
In Hopkins v. Stauffer, 18 Neb.App. 116, 775 N.W.2d 462 (2009), we determined that the Legislature's intent in *460 amending § 43-512.15 was to, in effect, partially overrule decisions of the Nebraska appellate courts which declared that incarceration was considered a voluntary reduction in income for purposes of child support obligations. We concluded that the Legislature clearly intended for an incarcerated inmate to be able to file his or her own complaint to modify child support and for the incarceration to be considered an involuntary reduction of income when the conditions of § 43-512.15(1)(b) are met. We held that the change of law making incarceration an involuntary reduction in income under certain conditions rather than a voluntary reduction constituted a material change of circumstances. In the case before us, we reverse the order of the district court to the extent that it found otherwise. As set forth more fully in Hopkins, we disagree with the dissent's position because it would lead to an absurd result, which the Legislature surely could not have intended.
The district court in the instant case noted that under § 43-512.15, modification is not appropriate if the inmate has a documented record of willfully failing or neglecting to provide proper support. Section 43-512.15(1)(b) provides in pertinent part:
For purposes of this section, a person who has been incarcerated for a period of one year or more in a county or city jail or a federal or state correctional facility shall be considered to have an involuntary reduction of income unless (i) the incarceration is a result of a conviction for criminal nonsupport pursuant to section 28-706 or a conviction for a violation of any federal law or law of another state substantially similar to section 28-706 or (ii) the incarcerated individual has a documented record of willfully failing or neglecting to provide proper support which he or she knew or reasonably should have known he or she was legally obligated to provide when he or she had sufficient resources to provide such support[.]
Rouse testified that at the time of his incarceration, not only was he current on his child support obligation, but he was a month ahead. The district court, however, found that Rouse had a substantial arrearage at the time his incarceration commenced and that "[n]o evidence was adduced to indicate that such arrearage was anything but willful or neglectful." We find no support in the record before us for the district court's statement that "[t]he evidence reveals that [Rouse] began serving his present sentence on or about March 26, 2003." Further, nothing in the statute limits the period of incarceration to that occurring after sentencing. A person continuously jailed while awaiting trial faces the same reduction in income as a person continuously incarcerated after sentencing, and the statute specifically references incarceration in jails in addition to incarceration in federal or state correctional facilities. Rouse testified that he was incarcerated in the county jail in December 2001, and the record shows no arrearage in child support until the last day of that month. Because there is no documented record of Rouse's willfully failing or neglecting to provide proper support when he had sufficient resources to provide such support, we reverse, and remand for further proceedings.

CONCLUSION
As we determined in Hopkins v. Stauffer, 18 Neb.App. 116, 775 N.W.2d 462 (2009), § 43-512.15 allows an incarcerated individual, under certain circumstances, to file a complaint seeking modification of his or her child support obligation upon the basis that his or her incarceration is an involuntary reduction of income. Because *461 Rouse has been incarcerated for 1 year or more and he does not have a documented record of willfully failing to pay child support when he had sufficient resources to do so, we reverse, and remand for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
CARLSON, Judge, dissenting.
I respectfully dissent from the conclusion reached by the majority that the Legislature's intent in amending § 43-512.15 was to effectively overrule prior holdings in Nebraska case law that incarceration was considered a voluntary reduction in income for the purpose of determining child support obligations. The majority concludes that the Legislature clearly intended that an incarcerated inmate be able to file his or her own modification action and that the fact of incarceration be considered an involuntary reduction of income when the provisions of § 43-512.15(1)(b) are met.
In my opinion, the plain language of the statute forecloses such a result. When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. To determine the legislative intent of a statute, a court generally considers the subject matter of the whole act, as well as the particular topic of the statute containing the questioned language. Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).
Neb.Rev.Stat. § 43-512.10 (Reissue 2008) states that "[s]ections 43-512 to 43-512.10 and 43-512.12 to 43-512.18 shall be interpreted so as to facilitate the determination of paternity, child, spousal, and medical support enforcement, and the conduct of reviews under such sections." As summarized, these sections apply to child support cases in which a party has applied for services under title IV-D of the federal Social Security Act. Section 43-512.12(1) requires the Department of Health and Human Services to determine whether such cases should be referred to a county attorney or authorized attorney for filing a modification action when the present obligation varies from the Supreme Court child support guidelines by more than the percentage amount established by court rule and the variation is due to financial circumstances which have lasted at least 3 months and can reasonably be expected to last for another 6 months.
I think the district court properly concluded that § 43-512.15(1) is inapplicable to Rouse's case. The subsection applies only to a county attorney in certain cases referred from the Department of Health and Human Services, and the entire statutory scheme refers only to title IV-D cases. No evidence was presented at the hearing on Rouse's complaint to modify that the Department of Health and Human Services has been involved in this case or that the case is a title IV-D case.
In making determinations of legislative intent, I believe that the majority has read the statutory language independently of its context and has improperly extended the clear statutory language in these statutes to all child support modification actions, regardless of whether these actions come within the clear parameters of the statute. The language of these statutes is clear and unambiguous; it is not necessary to "interpret" the Legislature's meaning.
I would affirm the decision of the district court to deny Rouse's complaint to modify his child support obligation.